**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BROOKE TAYLOR, CIELO JEAN GIBSON, JESSICA BURCIAGA, DESSIE MITCHESON, SARA UNDERWOOD, CORA SKINNER, RACHEL KOREN, TIFFANY TOTH, LINA POSADA, DANIELLE RUIZ, CLARK GILMER, CAMILA DAVALOS, MARIANA DAVALOS, JAIME EDMONDSON, LAURIE FETTER JACOBS, NATALIA VELEZ, JESSA HINTON, ERIKA SCHWEGLER, URSULA MAYES, KIM COZZENS, JENNIFER WALCOTT ARCHULETA, PAOLA CANAS, ROSIE JONES, MELANIE IGLESIAS, and ARIANNY CELESTE,

                  Plaintiffs,

         - against -

44TH ENTERPRISES CORP., d/b/a DIAMOND CLUB GENTLEMAN'S CABARET, MLB ENTERPRISE CORP., d/b/a LACE GENTLEMAN'S CLUB, ANTHONY CAPECI, LACE ENTERTAINMENT, INC, d/b/a LACE GENTLEMAN'S CLUB, GLEN ORECCHIO, STILETTO ENTERTAINMENT, LLC, d/b/a STILETTO'S, and MICHAEL ORECCHIO,

               Defendants.

Case No. _____

**COMPLAINT**

(Jury Trial Demanded)

      Plaintiffs BROOKE TAYLOR, CIELO JEAN GIBSON, JESSICA BURCIAGA,

DESSIE MITCHESON, SARA UNDERWOOD, CORA SKINNER, RACHEL KOREN,

TIFFANY TOTH, LINA POSADA, DANIELLE RUIZ CLARK GILMER, CAMILA

DAVALOS, MARIANA DAVALOS, JAIME EDMONDSON, LAURIE FETTER JACOBS,

JESSA HINTON, ERIKA SCHWEGLER, URSULA MAYES, KIM COZZENS, JENNIFER

WALCOTT ARCHULETA, PAOLA CANAS, ROSIE JONES, MELANIE IGLESIAS, and

ARIANNY CELESTE (collectively, "Plaintiffs"), by and through their undersigned counsel, as

and for their Complaint against defendants 44TH ENTERPRISES CORP., d/b/a DIAMOND CLUB GENTLEMAN'S CABARET, MLB ENTERPRISE CORP., d/b/a LACE GENTLEMEN'S CLUB, ANTHONY CAPECI, LACE ENTERTAINMENT, INC., d/b/a LACE GENTLEMEN'S CLUB, GLEN ORECCHIO, STILETTO ENTERTAINMENT, LLC, d/b/a STILETTO'S, and MICHAEL ORECCHIO, (collectively, "Defendants"), respectfully allege as follows:

### BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants theft, alteration, and unauthorized publication of sexually suggestive images of Plaintiffs, each of whom are world renowned professional models, in order to promote their strip clubs, Diamond Club Gentleman's Cabaret ("Diamond Club"), two (2) Lace Gentlemen's Clubs (hereinafter referred to as "Lace Manhattan" and "Lace West Nyack"), and three (3) Stiletto Palace Gentleman's Clubs (hereinafter referred to as "Stiletto Atlantic City", "Stiletto Nanuet", and "Stiletto Carlstadt") (collectively, the "Clubs").

2.      As detailed below, Defendants theft and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes, at minimum: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits false or misleading use of a person's image for purposes of advertising; b) violation of New York Civil Rights Law §§ 50-51, which protects a person's right to privacy and publicity; c) violation of New York's Deceptive Trade Practices Act (New York G.B.L. §349) which prohibits deceptive business practices; d) defamation, and; e) various common law torts.

3.      Although each of the Clubs is owned by a separate corporate entity, the Clubs operate as a single enterprise that, *inter alia*, and as specified below, shares Images of models for

- 2 -

purposes of advertising the Clubs on traditional and social media, have the same management, and/or advertise together online.   Indeed, Defendants interconnected advertising, branding, internet and social media presence is underscored by the fact that each of the Clubs represent and hold themselves out to be part of "Lace Clubs" and are all advertised on the website www.laceclubs.com (the "Lace Clubs Website"). A true and correct copy of homepage for the Lace Clubs Website is annexed hereto as Exhibit A.

4.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any of the Clubs, via any medium.

## JURISDICTION & VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1).

6.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.      According to publicly available records, Defendants are four (4) corporations formed under the laws of the State of New York, and the principals of these corporations.  Each one of these corporate defendants operates one of the Clubs, which are located in New York County, Rockland County, or New Jersey. As detailed below, these defendants operate as part of a single enterprise.

8.      Venue is proper in the United States District Court for the Southern District of New York because New York County is the principal place of business for defendants 44th Enterprise, Inc. and MLB Enterprise, Inc.

9.      All parties have minimum contacts with New York County, a significant portion

of the alleged causes of action arose and accrued in New York County, New York, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in New York County.

**PARTIES**

*Plaintiffs*

10.     Plaintiff Brooke Taylor ("Taylor") is a well known professional model, and a resident of Santa Barbara County, California.

11.     Plaintiff Cielo Jean ("CJ") Gibson ("Gibson") is a well known professional model, and a resident of Los Angeles County, California.

12.     Plaintiff Jessica Burciaga ("Burciaga") is a well known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff Dessie Mitcheson ("Mitcheson") is a well known professional model, and a resident of Orange County, California.

14.     Plaintiff Sara Underwood ("Underwood") is a well known professional model, and a resident of Columbia County, Oregon.

15.     Plaintiff Cora Skinner ("Skinner") is a well known professional model, and a resident of Los Angeles County, California.

16.     Plaintiff Rachel Koren ("Koren") is a well known professional model, and a resident of Los Angeles County, California.

17.     Plaintiff Tiffany Toth ("Toth") is a well known professional model, and a resident of Orange County, California.

18.     Plaintiff Danielle Ruiz ("Ruiz") is a well known professional model and a resident of Los Angeles County, California.

19.     Plaintiff Clark Gilmer ("Gilmer") is a well known professional model and a resident of Los Angeles County, California.

20.     Plaintiff Camila Davalos ("Camila Davalos") is a well known professional model, and a resident of Los Angeles County, California.

21.     Plaintiff Mariana Davalos ("Mariana Davalos") is a well known professional model and a resident of Los Angeles County, California.

22.     Plaintiff Jaime Edmondson ("Edmondson") is a well known professional model, and a resident of Pinellas County, Florida.

23.     Plaintiff Laurie Fetter Jacobs ("Jacobs") is a well known professional model, and a resident of Westchester County, New York.

24.     Plaintiff Jessa Hinton ("Hinton") is a well known professional model, and a resident of Los Angeles County, California.

25.     Erica Schwegler ("Schwegler") is a well known professional model, and a resident of Los Angeles County, California.

26.     Plaintiff Ursula Mayes ("Mayes") is a well known professional model, and a resident of Orange County, California.

27.     Plaintiff Kim Cozzens ("Cozzens") is a well known professional model, and a resident of Santa Clara County, California.

28.     Plaintiff Jennifer Walcott Archuleta ("Archuletta") is a well known professional model, and a resident of Maricopa County, Arizona.

29.     Plaintiff Paola Canas ("Canas") is a well known professional model, and a resident of Los Angeles County, California.

30.     Plaintiff Rosie Jones ("Jones") is a well known professional model, and a resident

of the United Kingdom.

31.     Plaintiff Melanie Iglesias ("Iglesias") is a well known professional model, and a resident of Los Angeles County, California.

32.     Plaintiff Arianny Celeste ("Celeste") is a well known professional model, and a resident of Los Angeles County, California.

***Defendants***

33.     According to publicly available records, defendant 44th Enterprises Corp. ("44th Enterprises") is a corporation organized under the laws of the State of New York, and has a principle place of business at 160 East Jericho Turnpike, suite 117, Huntington, New York 11743.  44th Enterprises operates Diamond Club Gentleman's Cabaret ("Diamond Club"), a strip club located at 689 Eighth Avenue, New York, New York.

34.     According to publicly available records, defendant MLB Enterprises Corp. ("MLB"), is a corporation organized under the laws of the State of New York, and has the identical principle place of business as 44th Enterprise, *i.e.*, 160 East Jericho Turnpike, suite 117, Huntington, New York 11743.   MLB operates Lace New York, a strip club located at 725 Seventh Avenue, New York, New York.

35.     Upon information and belief, defendant Peter Capeci ("Capeci") is a resident of the State of New York.  Capeci is identified by the New York Department of State - Division of Corporations, as the Chief Executive Officer of both 44th Enterprise and MLB.   Upon information and belief, Capeci, in his capacity as C.E.O. of both 44th Enterprise and MLB maintains operational control over Diamond Club and Lace New York, including all advertising relating thereto.

36.     According to publicly available records, defendant Lace Entertainment, Inc.

("Lace Entertainment")  is a corporation organized under the laws of the State of New York, and has a principle place of business at 195 Route 303 North, West Nyack, New York 10994.  Lace Entertainment operates Lace West Nyack, a strip club located at 195 Route 303, West Nyack, New York.

37.     Upon information and belief, defendant Glen Orecchio is a resident of the State of New York.  Glen Orecchio is identified by the New York Department of State - Division of Corporations, as the Chief Executive Officer of Lace Entertainment.  Upon information and belief, Glen Orecchio, in his capacity as C.E.O. of Lace Entertainment, maintains operational control over Lace West Nyack, including all advertising relating thereto.

38.     According to publicly available records, defendant Stiletto Entertainment, LLC ("Stiletto Entertainment") is a corporation organized under the laws of the State of New York, and has a principle place of business at 180 E Route 59, Nanuet, New York 10954.  Upon information and belief, Stiletto Entertainment operates Stiletto Nanuet, a strip club located at 180 E Route 59, Nanuet, New York, Stiletto Carlstadt, a strip club located at 325 Paterson Plank Road, Carlstadt, New Jersey, and Stiletto Atlantic City, a strip club located at 185 S Carolina Avenue, Atlantic City, New Jersey.

39.     Upon information and belief, defendant Michael Orecchio is a resident of the State of New York.  Upon information and belief, Michael Orecchio, is the principal and C.E.O. of Stiletto Entertainment, and in such capacity maintains operational control over Stiletto Nanuet, Stiletto Carlstadt, and Stiletto Atlantic City, including all advertising related to these clubs.

40.     Although some of the Clubs are owned by separate corporate entities, the Clubs operate as a single enterprise that, *inter alia*, and as specified below, shares Images of models for

purposes of advertising the Clubs on traditional and social media.  The fact that these Clubs are part of the same enterprise is underscored by the facts that they are all advertised on the Lace Clubs Website.

## FACTUAL ALLEGATIONS

41.     As set forth immediately below, each Plaintiff is an extremely well known professional model who earns her livelihood modeling and selling her Images to companies, magazines and individuals for the purpose of advertising products and services.

42.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

43.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at or endorsed Show Palace and/or Sin City.

44.     In the case of each and every Plaintiff, such appearance was false.

45.     Moreover, in each and every case, this misappropriation occurred without any of the Plaintiffs' knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

*Plaintiffs' Backgrounds and Careers*

46.     Taylor is a world renowned model who has appeared in *Playboy*, *FHM*, *Maxim*, and *Stuff*. She has also appeared in commercials and billboards Fredrick's of Hollywood, Coors

Light, and Budweiser.  Taylor been also featured in countless other catalogs, magazines, billboards, and television commercials and shows including, most recently, *Viva Glam*.

47.    That we know of, Taylor is depicted in the photos in Exhibit B in order to promote Stiletto Nanuet.  This Image was intentionally altered and depicts Taylor topless, and shooting a bow and arrow, below the copy: "Happy Valentine's Day from all of us at Stiletto! Come grab yourself a girlfriend tonight."  Not only was this Image altered to make it appear that Taylor was a stripper working at Stiletto, but the copy, "Come grab yourself a girlfriend tonight" also implies that patrons of Stiletto could come "grab" Taylor and make her their "girlfriend."

48.    Taylor has never been employed at any of the Clubs, has never been hired to endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

49.    Gibson is an extremely successful model who got her start in the industry when she won the *Import Turner* magazine Model Search.  Gibson has a massive motor sport following, and is currently the model for the Falken Drift Team and SBT, Inc. (Short Block Technologies), as well as being a Top Rank Boxing model.  Gibson has been seen in the pages of *FHM*, *American Curves* (cover), *Supreme, MuscleMag International* and *Muscle & Fitness*, and has over 48,000 Instagram followers.[1]

50.    That we know of, Gibson is depicted in the photos in Exhibit "C", which were published on the Stiletto Nanuet Instagram Page.  These images depict Ms. Gibson in sexually suggestive outfits, and were intentionally altered to make it appear that Ms. Gibson was either a stripper working at Stiletto Nanuet, or that she endorsed the Club.

51.    Gibson has never been employed at any of the Clubs, has never been hired to

---

[1] In the modeling industry, the number of online followers a model has is a strong indication of her popularity and, thus, earning potential.

endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

52.     Burciaga is a model and businesswomen, and the owner of Sailor and Saint Clothing line. Burciaga was the *Playboy* Playmate of the Month for February 2009, and has also modeled for *Stuff*, *Maxim*, *EA Sports*, *Import Turner*, *Modified Magazine*, and *Show Latina*, among many others.  Burciaga has 1.3 million followers on Instagram and 200k followers on Twitter.

53.     That we know of, Burciaga is depicted in the photos in Composite "D" which were published on the Stiletto Nanuet Twitter page in order to promote Stiletto Nanuet and Stiletto Carlsdadt.  This Image was intentionally altered to make it appear that Ms. Burciaga was either a stripper working at one of the Stiletto entities, or endorsed same, an appearance bolstered by the copy: "Grab a six pack and head to @NJStiletto for a CAN'T MISS SUMMER PARTY with 40 beautiful ladies!"

54.     Burciaga has never been employed at any of the Clubs, has never been hired to endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

55.     Mitcheson is a well known model and actress, best known for winning *Maxim's* Hometown Hottie contest in 2013. Mitcheson has served as the face of the MGM Grand, and the face of Playboy Intimates.  She has over 107,000 Instagram followers, and in May 2015 served as the main ring girl during the Floyd Mayweather/Manny Pacquiao fight in Las Vegas.

56.     That we know of, Mitcheson is depicted in the photos in Composite "E" to promote Stiletto Nanuet.  These Images depicts Mitcheson in a sexually suggestive Christmas outfit inviting potential Stiletto Nanuet clientele to the Stiletto Christmas party.  This Image was

intentionally altered to make it appear that Mitcheson was either a stripper working at the club, or that she endorsed the club.

57.     Mitcheson has never been employed at any of the Clubs, has never been hired to endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

58.     Underwood is a world famous model whom first appeared on the cover of *Playboy* in October 2005, was *Playboy*'s Playmate of the Month for July 2006, and was named *Playboy's* Playmate of the Year for 2007.   Underwood has not only been featured in various *Playboy* videos, but has likewise appeared, as herself, in the major motion pictures *The House Bunny* and *Miss March*.  She has also appeared on episodes of such reality TV series as *Kendra*, *The Girls Next Door*, and *Bridget's Sexiest Beaches*.   Underwood also works regularly in television as a continuity announcer for the Blackbelt TV cable network, and has served as co-host of G4's *Attack of the Show*.  Underwood has more than 950,000 Instagram followers, over 465,000 Twitter followers, and nearly 1.4 million followers on Facebook.

59.     That we know of, Underwood is depicted in the photos in Composite "F" in order to promote Stiletto Nanuet.  This Image depicts Underwood in a sexually suggestive outfit, cooking food over a grill, below the copy: "TONIGHT (and every Friday): Don't miss the Stiletto Happy Hour Summer BBQ from 4pm-7pm.  Burgers and dogs on us!"  This Image was intentionally altered to make it appear that Underwood was either a stripper working at Stiletto Nanuet, or endorsed same.

60.     Underwood has never been employed at any of the Clubs, has never been hired to endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

- 11 -

61.     Skinner is a model and actress who has appeared on *CSI: Miami*, *Rules of Engagement*, *Shark*, *Las Vegas*, and *The Tonight Show*. Skinner has also modeled for a variety of internationally known brands, including Sketchers, Nordstrom, Fredericks of Hollywood, Tecate, Skky Vodka, and Muscle & Fitness, and has appeared in music videos for the likes of Def Leppard.   In addition, Skinner has appeared in *Maxim*, in both the United States, and various European versions, the *Playboy* lingerie catalog (to name just a few of her campaigns), and has her own set of Bench Warmer trading cards.

62.     That we know of, Skinner is depicted in the photo in Composite "G" in order to promote Stiletto Nanuet on its Twitter page.  This Image depicts Skinner in a sexually suggestive costume and was intentionally altered to make it appear that Skinner was either a stripper working at Stiletto Nanuet, or endorsed Stiletto Nanuet. This false impression was bolstered by the copy above Skinner's picture, which reads: "It's #MardiGras2014!!! Grab a drink at @laceclubsny, then come get your zipper polished at Stiletto :)".  Obviously the intention of this copy was not only to make it appear that Skinner worked at Stiletto, but that she was available to potential clientele should they desire to have their "zipper polished."

63.     Skinner has never been employed at any of the Clubs, has never been hired to endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

64.     Koren is an internationally known, and highly sought after, model who has walked runways for fashion shows in Miami's Mercedes Benz Fashion Week, filmed for travel TV show *Bikini Destinations*, shot for major campaigns in Los Angeles, and is the face of numerous major brands.  Koren can be seen across the nation on billboards, buildings and bus stops in a campaign for MIDORI along with Kim Kardashian.   As an actress, Ms. Koren has

appeared in *Date Night*, with Steve Carell and Tina Fey, in *The Closer*, and many others.  She has also appeared in campaigns for brands such as Nike, Reebok, Affliction Clothing, Volcom, Body Glove, Sinful, American Customs, Alo, Modern Salon Magazine, No Fear, Axe Body Spray, Paul Mitchell, Vibra Magazine, Launch Pad Magazine, Cut & Dry Magazine, Hairdo Magazine, Sunset Tan, Divine Boutique, Esquire Magazine, Vogue Magazine, True Religion, Jessica Simpson Swimwear, Ed Hardy, Christian Audigier, Smet, Rebel X Magazine, SNI Swimwear, Tommy Bahama, Roma, J Valentine, Sunsets Inc, B Swim, Love Culture, Maxim, Viva Glam Magazine, Fantasy Lingerie, Elegant Moments, So Cal Swimwear, No Fear, Swim Magazine, American Honey, Have Faith Swimwear.  She also owns her own company, Cashmere Hair Extensions, which appeared on ABC's *Shark Tank* in 2013.  She has over 122,000 followers on Instagram.

65.     That we know of, Koren is depicted in the photos in Composite "H" in order to promote the Stiletto Nanuet Christmas Party.   These Images depict Koren in a sexually suggestive outfit and were intentionally altered to make it appear that Koren was either a stripper working at Stilleto Nanuet, or endorsed the club.  This false appearance is bolstered by the copy above the Images, one of which reads: "TONIGHT ONLY: It's the Stiletto XXX-Mas spectacular!!! Prizes, giveaways, and 50 ladies..unwrap your gift tonight:)".

66.     In addition, Koren appears in a photo in Exhibit H to promote Diamond Club on the Diamond Club Website.  This Image likewise depicts Koren in a sexually suggestive outfit and was intentionally altered to make it appear that Koren was either a stripper working at Diamond Club, or endorsed the club.

67.     Koren has never been employed at any of the Clubs, has never been hired to endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her

Image, and has suffered, and will continue to suffer, damages as a result of same.

68.     Toth is an extremely successful model who was the September 2011 *Playboy* Playmate of the Month. Toth has also appeared in a variety of magazines including *Super Street Bike, Import Tuner, Sport Truck, Iron Man, Seventeen*, and *Maxim*, as well as appearing in countless other catalogs and publications.   Toth's popularity and renown is evidence by the fact that she has over 2 million Facebook followers, over 300,000 Instagram followers, and over 100,000 Twitter followers. In addition to her Toth's modeling work, she owns and maintains her own e-commerce site.

69.     That we know of, Toth is depicted in the photos in Exhibit "I" to promote Lace New York and Diamond Club. These Images depict Toth in various sexually suggestive outfits, which were either published on the Clubs' website, or, in the case of Diamond Club, were published on a street billboard that was meant to attract potential patrons who were walking or driving by the Diamond Club on 8th Avenue in Manhattan.   These images were intentionally altered to make it appear that Toth was either a stripper working at Lace New York or Diamond Club, or that she endorsed either of the Clubs.

70.     Toth has never been employed at any of the Clubs, has never been hired to endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

71.     Posada is an internationally known fashion model and designer from Barranquilla, Colombia.  She is best known for her appearances in the *Besame* and *Espiral* lingerie collections, but has also modeled countless other brands, including Pradizia Swimwear, Babalu Swimwear, and Ujeans.

72.     That we know of, Posada is depicted in the photos in Exhibit "J" to promote

Diamond Club.  This Image appeared on the Diamond Club website, depicts Posada in a sexually suggestive outfit, and was intentionally altered to make it appear that Posada was either a stripper working at Diamond Club, or that she endorsed the club.

73.     Posada has never been employed at any of the Clubs, has never been hired to endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

74.     Ruiz is a veteran of the entertainment industry and an extremely accomplished, established, and highly sought after model, host, and actor. She shot to fame by winning Miss Hawaiian Tropic Brazil and has modeled for Foreplay Lingerie, Elegant Moments, Escante Lingerie, Hustler Apparel, Body Zone Apparel, and Ziggy NY Shoes.  Ruiz has also served as a contract model for Fredericks of Hollywood, L*Space, and has been Rockstar Energy's Miss Motorcross and a Monster Energy Dime Squad Girl.  She has appeared in many magazines, and graced the covers of *Maxim* and *Elegant*.  Ms. Ruiz's credits as an actress are equally impressive, with appearances on *The New Girl*, *The Finder*, *Breaking In*, *Cougar Town, CSI*, *Entourage*, *The Jonas Brothers*, *Miami Trauma*, *Dark Blue, Love Bites*, *Friends with Benefits, Battle LA*, *The Ex's* and, as a host, the television series *WPT Royal Flush*. She has over 126,500 followers on Instagram and 14,000 on Twitter.

75.     That we know of, Ruiz is depicted in the photo in Exhibit "K" to promote Diamond Club.  This photo depicts Ruiz topless, and in sexually suggestive lingerie, and was intentionally altered to make it appear that Ruiz was either a stripper working at Diamond Club, or that she endorsed Diamond Club.  This false appearance is bolstered by the copy beside Ms. Ruiz which reads, "EMAIL US TODAY…" and "CALL US TODAY…"

76.     Ruiz has never been employed at any of the Clubs, has never been hired to

endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

77.     Gilmer is a well known professional model and graduate of the University of South Carolina. Having gained significant notoriety as a swimwear model, Gilmer is now signed with NTA Talent in Los Angeles, and has appeared in a multitude of catalogues, magazines, campaigns, and commercials, as well as major motion pictures and televisions shows, including *Argo*, in 2012.

78.     That we know of, Gilmer is depicted in the photos in Exhibit "L" to promote Stiletto Carlstadt's Christmas Party. This  Image was intentionally altered to make it appear that

79.     Gilmer has never been employed at any of the Clubs, has never been hired to endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

80.     Mariana Davalos is a model who has a burgeoning career in the talent industry. She has over 175,000 Instagram followers and has a tremendous Latin American and international following with 250,000 Facebook followers.

81.     Camila Davalos, who is Mariana Davalos' twin sister, started modeling with her sister at the age of 10, and by the time she was 18 she was one of the most famous and successful models in Colombia, where she grew up.. At age 22 Camila Davalos became the face of the world famous BESAME lingerie line, and since then has earned a reputation as a Latin Super model.  She has appeared in hundreds of magazine editorials, catalogues, runway shows and covers, including in *Maxim*, *Imagen*, *Besame*, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans and Satori.

82.     That we know of Mariana and Camila Davalos are depicted in the photo in Exhibit "M" to promote Stiletto Carlstadt on its Twitter page.  This Image shows them in sexually suggestive outfits in order to promote Colombian Independence Day beside the copy: "Aye Mamacitas! Twins."

83.     Neither Mariana nor Camila Davalos have ever been employed at any of the Clubs, have ever been hired to endorse any of the Clubs, have ever received any remuneration for Defendants' unauthorized use of their Image, and have suffered, and will continue to suffer, damages as a result of same.

84.     Edmondson is a graduate of Florida Atlantic University, is a former police officer, and Miami Dolphins cheerleader, and was the January 2010 *Playboy* Playmate of the Month. Edmondson was a participant in the competitive reality TV series "The Amazing Race 14," has served as a sports blogger for Playboy online and co-host of Sirius Fantasy Sports Radio, and has appeared in "The Bunny House" documentary, in the Trace Adkins video for "This Aint No Love Song" and numerous other television, print, radio and online outlets.  Edmondson has two children with her fiancée, Major League Baseball superstar, Evan Longoria.

85.     That we know of, Edmondson is depicted in the photos in Exhibit "N" to promote Lace West Nyack and the Stiletto entities.  These Images show Edmondson in a variety of sexually suggestive outfits in order to promote football, and Superbowl, parties, at the Clubs, and were intentionally altered to make it appear that Edmondson either worked at, or endorsed, the Clubs.

86.     Edmondson has never been employed at any of the Clubs, has never been hired to endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

87.     Jacobs is an American model and actress and the May 2003 *Playboy* Playmate of the Month.  Jacobs has likewise appeared in *Maxim*, *FHM*, and *Vanity Fair*, and in commercial and advertisements for Kohl's, Macy's, McDonalds, Sunglass Hut, and Leg Avenue.  As an actress Jacobs has appeared in the independent film "Hiters", made a guest appearance on an episode of the hit TV series "CSI: Crime Scene Investigation," and won the 2005 Best Actress Award for Excellence at the Japanese Adult Broadcasting Awards for "Playmate Profile," which was televised on the Japanese satellite TV broadcaster Sky PerfecTV!.  Jacobs has over 41,000 Twitter followers

88.     That we know of, Jacobs is depicted in the photos in Exhibit "O" to promote the Stiletto Carlstadt Christmas party on that Club's Twitter page. This picture was intentionally altered to make it appear that Jacobs either worked at Stiletto Carlstadt, or endorsed the Club.

89.     Jacobs has never been employed at any of the Clubs, has never been hired to endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

90.     Hinton is a world renowned and highly sought after model, who was the July 2011 *Playboy* Playmate of the Month.  Hinton has been active in the entertainment industry since the age of sixteen (16), and has appeared in countless national commercial and television shows. In 2010 Hinton became the face of the Palms Hotel & Casino's advertising campaign, has hosted the television show *Victory Poker,* has served as the interview personality for *Top Rank Boxing*, and has been the centerpiece of an advertising campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises.  Hinton has also served as a spokes model for Affliction Clothing, Enzo, Milano Hair Products, REVIV Wellness Spa, Protein World, Rhonda Shear Shapewear, Leg Avenue and Roma Costume, and has been a featured cover model for magazines

such as *FHM*, *Kandy*, *MMA Sports*, *Guitar World*, and *Muscle & Fitness*. Her images have likewise appeared on countless billboards, magazines, posters, and multiple forms of electronic media. Ms. Hinton has been named Creative Director for MAJR Media, and she also served as a guest host for the television station KTLA in Los Angeles. In addition, Hinton has earned an elite status as a social media celebrity, with more than 1.1 million followers on Instagram, 872,000 followers on Facebook, and 181,000 followers on Twitter.

91.     That we know of, Hinton is depicted in the photos in Exhibit "P" to promote Stiletto Atlantic City on its Facebook page. This Image shows Hinton in a sexually suggestive outfit and was intentionally altered in order to make it appear that Hinton was either a stripper working at Stiletto Atlantic City, or endorsed the Club, an appearance bolstered by the copy beside the Image which reads: "The ladies of Stiletto are waiting for you, are you ready?"

92.     Hinton has never been employed at any of the Clubs, has never been hired to endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

93.     Schwegler is a Brazilian model, actor, fitness model and social media influencer, with a social media audience of nearly 2 million followers. Schwegler has appeared in magazines such as *Men's Fitness, Ironman, Southern Vixens, Sin City*, and *FHM*, and also competes in the Olympia forum of fitness, and has her own series of fitness videos. Schwegler is also a contract spokeswoman for Protein World supplements.

94.     That we know of, Schwegler is depicted in the photos in Exhibit "Q" to promote Stiletto Atlantic City on its Facebook page. This Image shows Schwegler in a sexually suggestive outfit and was intentionally altered in order to make it appear that Schwegler was either a stripper working at Stiletto Atlantic City, or endorsed the Club, an appearance bolstered

by the copy beside the Image which reads: "This weekend make sure you stop by and get cozy with some of the sexy ladies of Stiletto."

95.     Schwegler has never been employed at any of the Clubs, has never been hired to endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

96.     Mayes is a well-known model whose career started with a spread in *Maxim* magazine, and who has appeared in countless publications since then, including *Vogue*, *Elle*, *In Style*, *Cosmopolitan*, *Marie Claire*, and many more. Mayes has appeared on television on *Deal or No Deal*, *Minute To Win It*, *The Tonight Show*, and *The Jay Leno Show*, and has appeared in commercial campaigns for Coronet Diamonds, Volkswagen, Subaru, and Bacardi, to name a few. She was also the cover model and star of the game *Juiced 2: Hot Import Nights*, and likewise serves as a paid spokes model for a global events company.

97.     That we know of, Mayes is depicted in the photo in Exhibit "R" in order to promote the Stiletto Atlantic City St. Patrick's Day party.  This Image depicts Mayes in a sexually suggestive outfit, and was intentionally altered in order to make it appear that Mayes was either a stripper working at Stiletto Atlantic City, or that she endorsed the Club.

98.     Mayes has never been employed at any of the Clubs, has never been hired to endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

99.     Cozzens is a model and actress who has appeared on an Old Spice national commercial, as well as a New Amsterdam Vodka national commercial. She has modeled for campaigns with Guess, Old Spice, Grey Goose, Sephora Cosmetics, Con Air Hair Tools, Sketcher Shoes, and many more. She has also modeled for Maxim magazine, Sandals Resort,

Dodge, and Pepsi to name a few.  Cozzens in total, has signed with 12 top agencies internationally, two of them being LA Models and LATALENT

100.    That we know of, Cozzens is depicted in the photo in Exhibit "S" to promote the Lace West Nyack Halloween party on its Facebook page.  This Image depicts Cozzens in a sexually suggestive outfit, and was intentionally altered in order to make it appear that Cozeens was either a stripper working at Lace West Nyack, or that she endorsed the Club.

101.    Cozzens has never been employed at any of the Clubs, has never been hired to endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

102.    Archuleta is an American model, actress, and reality TV star, who was the *Playboy* Playmate of the Month for August 2001.  She subsequently launched her own website, appeared in a variety of *Playboy* editions, was chosen by Carmen Electra to model for her celebrity guest photographer photo shoot on Playboy.com, and has appeared in music videos for the likes of Justin Timberlake, Sterophonics, and Marc Anthony. Archuleta has appeared on the cover of numerous magazines, including *Holistic Health, Moves, American Curves, Muscle & Fitness, Hers, Physical, Iron Man, VP Racing Fuel*, and many others.  As an actress, Archuleta has appeared in *America Pie: Band Camp*, *The Pool Boys*, *Weakest Link, Street Smarts, Wild On!*, and *Ripley's Believe It or Not*.  Archuleta currently lives in Arizona, where she is raising her three children with her husband, former NFL star Adam Archuleta.

103.    That we know of, Archuletta depicted in the photo in Exhibit "T" to promote Stiletto Nanuet on its Twitter page.  This Image depicts Archuleta in a sexually suggestive outfit, and was intentionally altered in order to make it appear that Archuleta was either a stripper working at Stiletto Nanuet, or that she endorsed the Club.

104.   Archuleta has never been employed at any of the Clubs, has never been hired to endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

105.   Canas is a Colombian-born model, actress, and television host, who over the past 12 years has appeared as a runway model at fashion shows throughout the world, and currently serves as the is the international face of Curve lingerie.  Canas was recently chosen as the face of the Masters Gold Tournament in Dubai, and was the image for the "International Surf and Sport expo" in Orlando. She has worked for international brands and labels such as SOHO, KISS underwear, Salon International, Zona Rosa, and Esteban Escobar. She has appeared in numerous TV shows like FOX Sports and on both Telemundo and TV Azteca as herself.

106.   That we know of, Canas is depicted in the photo in Exhibit "U" to promote the Lace West Nyack Halloween party on its Twitter page.  This Image depicts Canas in a sexually suggestive Halloween costume, and was intentionally altered to make it appear that Canas was either a stripper working at Lace West Nyack, or endorsed the Club, a false appearance bolstered by the copy above the Image, advertising "50+ entertainers in sexy costumes!"

107.   Canas has never been employed at any of the Clubs, has never been hired to endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

108.   Jones is a glamour model born in Middlesex, England, who is regularly featured in many of the UK's top men's magazines.  Jones started modeling at 17, and has appeared in many magazines, including *FHM, Loaded, Nuts,* and *Front Army.*  She has 208,000 followers on Instagram, 206,000 followers on Twitter, and 1,064,000 followers on Facebook.

109.   That we know of, Jones is depicted in the photo in Exhibit "V", to promote Lace

West Nyack.  This Image depicts Jones topless, and was intentionally altered to make it appear that Jones was a stripper working at Lace West Nyack, and false appearance bolstered by the copy which ran beside the photo, which reads: "Everyday is #Topless Thursday at #Lace Come in tonight – see our NEWLY renovated club & get to know our sexxxy girls!"

110.    Jones has never been employed at any of the Clubs, has never been hired to endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same

111.    Iglesias is an American model, actress and social media influencer. Since being voted *Maxim's* "Hometown Hotties" winner in 2010, she has been featured in magazines such *World's Most Beautiful*, *Esquire*, and *Vibe*  Iglesias has appeared in the World Poker Tour series, and has appeared as herself on all seasons of MTV's "Guy Code" and "Girl Code," as well as the "Guy Code" spin-off, "Guy Court." Iglesias has likewise appeared as a guest on the "Ellen DeGeneres Show", has hosted the "MLB Fan Cave," and can be seen, in her first starring role in a feature film, in "Abnormal Attraction," slated for release in 2016.  Her social media consists of 1.3 mil Instagram followers, 1.6 mil Facebook followers, and 728k Twitter followers.

112.    That we know of, Iglesias is depicted in the photo in Exhibit "W", to promote Lace West Nyack.  This Image depicts Iglesias in a sexually suggestive outfit and was intentionally altered to make it appear that Iglesias was either a stripper working at Lace West Nyack, or endorsed the Club.

113.    Iglesias has never been employed at any of the Clubs, has never been hired to endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

114.    Celeste is an American model, business woman who is consistently recognized as

- 23 -

one of the most popular personalities of the UFC, where she has worked as an Octagon Girl since 2006.  Celeste is among the most sought after talents in the modeling world, having appeared on the covers of some of the world's most famous magazines, including, *Playboy*, *Maxim* (United States, Korea, and Philippines versions), *FHM* (United States and Australian versions), and *UFC Magazine*. In addition to modeling, Celeste has hosted television shows, including the popular Velocity TV show, *Overhaulin*', has appeared in short films, and has recorded original music. Celeste is in an elite class of Social Media influencers with over 1.8 million Instagram followers, almost a half million Twitter followers and 3.1 million fans on Facebook, combined with her own personal website.

115.   That we know of, Celeste is depicted in the photos in Exhibit X in order to promote Stilleto Nanuet on its Twitter and Instagram pages.  These Images depict Celeste in sexually suggestive outfits, and were intentionally altered to make it appear that Celeste was either a stripper working at Stiletto Nanuet, or endorsed the club.   This false appearance is bolstered by the fact that the Image depicts Celeste cooking on a grill, beside the copy:  "THIS FRIDAY (and every Friday this summer) Don't Miss the Stiletto Happy Hour BBQ from 4-7pm. Burgers and dogs on us!"

116.   Celeste has never been employed at any of the Clubs, has never been hired to endorse any of the Clubs, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

*Defendants' Business*

## 44th Enterprise

117.   Upon information and belief, 44th Enterprises operates Diamond Club, where it engages in the business of selling alcohol and food in an atmosphere were nude and/or semi-

nude women entertain the business' clientele.

118.   Upon information and belief, and in furtherance of its promotion of Diamond Club, 44th Enterprise owns, operates and controls the Diamond Club website, located at www.diamondclubnyc.com (hereinafter, the "Diamond Club website").   In addition, and upon information and belief, 44th Enterprises Group owns, operates, and controls the Diamond club Facebook, Twitter, and Instagram accounts.

119.   44th Enterprises uses the Diamond Club website, and the Diamond Club Facebook, Twitter, and Instagram accounts, to promote Diamond Club, and to attract patrons thereto.

120.   44th Enterprises does this for its own commercial and financial benefit.

121.   44th Enterprises has used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that these Plaintiffs either worked as a strippers at Diamond Club or endorsed Diamond Club

122.   44th Enterprises used Plaintiffs' Images, and created the false impression that they worked at or endorsed Diamond Club in order to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

123.   As 44th Enterprises was at all times aware, at no point have any of the above named Plaintiffs ever been affiliated with or employed by Diamond Club, and at no point have any of the Plaintiffs ever endorsed Diamond Club.

124.   All of 44th Enterprises activities, including its theft of Plaintiffs' Images, and

publication of same, were done without the knowledge or consent of Plaintiffs, and 44th Enterprises did not compensate Plaintiffs for its use of their Images.

125.    As such, Plaintiffs have never received any benefit for 44th Enterprises use of their Images.

**MLB**

126.    Upon information and belief, MLB operates Lace New York, where it engages in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

127.    Upon information and belief, and in furtherance of its promotion of Lace New York, MLB owns, operates and controls the Lace New York website, located at www.lacenyc.com (hereinafter, the "Lace New York website").    In addition, and upon information and belief, MLB owns, operates, and controls the Lace New York Facebook, Twitter, and Instagram accounts.

128.    MLB uses the Lace New York website, and the Lace New York Facebook, Twitter, and Instagram accounts, to promote Lace New York, and attract patrons to Lace New York.

129.    MLB does this for its own commercial and financial benefit.

130.    MLB has used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that these Plaintiffs either worked as a strippers at Lace New York, or endorsed Lace New York.

131.    MLB used Plaintiffs' Images, and created the false impression that they worked at or endorsed Lace New York in order to receive certain benefits therefrom, including but not

limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

132.    As MLB was at all times aware, at no point have any of the above named Plaintiffs ever been affiliated with or employed by Lace New York, and at no point have any of the Plaintiffs ever endorsed Lace New York.

133.    All of MLB's activities, including its theft of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and MLB did not compensate Plaintiffs for its use of their Images.

134.    As such, Plaintiffs have never received any benefit for MLB's use of their Images.

**Lace Entertainment**

135.    Upon information and belief, Lace Entertainment operates Lace West Nyack, where it engages in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

136.    Upon information and belief, and in furtherance of its promotion of Lace West Nyack, Lace Entertainment owns, operates and controls the Lace West Nyack website, located at www.lacewestnyack.com (hereinafter, the "Lace West Nyack website").   In addition, and upon information and belief, Lace Entertainment owns, operates, and controls the Lace West Nyack Facebook, Twitter, and Instagram accounts.

137.    Lace Entertainment uses the Lace West Nyack website, and the Lace West Nyack Facebook, Twitter, and Instagram accounts, to promote Lace West Nyack, and attract patrons to Lace West Nyack.

138.    Lace Entertainment does this for its own commercial and financial benefit.

139.    Lace Entertainment has used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that these Plaintiffs either worked as a strippers at Lace West Nyack, or endorsed Lace West Nyack.

140.    Lace Entertainment used Plaintiffs' Images, and created the false impression that they worked at or endorsed Lace West Nyack in order to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

141.    As Lace Entertainment was at all times aware, at no point have any of the above named Plaintiffs ever been affiliated with or employed by Lace West Nyack, and at no point have any of the Plaintiffs ever endorsed Lace West Nyack.

142.    All of Lace Entertainment's activities, including its theft of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Lace Entertainment did not compensate Plaintiffs for its use of their Images.

143.    As such, Plaintiffs have never received any benefit for Lace Entertainment's use of their Images.

**Stiletto Entertainment**

144.    Upon information and belief, Stiletto Entertainment owns and operates Stiletto Nanuet, Stiletto Carlstadt, and Stiletto Atlantic City (the "Stiletto Clubs") where it engages in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

145.    Upon information and belief, and in furtherance of its promotion of the Stiletto Clubs, Stiletto Entertainment owns, operates and controls the Stiletto Clubs' websites, located at www.stilettoadultclubs.com (hereinafter, the "Stiletto Clubs website").   In addition, and upon information and belief, Stiletto Entertainment owns, operates, and controls the Stiletto Clubs' Facebook, Twitter, and Instagram accounts.

146.    Stiletto Entertainment uses the Stiletto Clubs' website, and the Stiletto Clubs' Facebook, Twitter, and Instagram accounts, to promote the Stiletto Clubs, and attract patrons to the Stiletto Clubs.

147.    Stiletto Entertainment does this for its own commercial and financial benefit.

148.    Stiletto Entertainment has used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that these Plaintiffs either worked as a strippers at the Stiletto Clubs, or endorsed the Stiletto Clubs.

149.    Stiletto Entertainment used Plaintiffs' Images, and created the false impression that they worked at or endorsed the Stiletto Clubs in order to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

150.    As Stiletto Entertainment was at all times aware, at no point has any of the above named Plaintiffs ever been affiliated with or employed by the Stiletto Clubs, and at no point have any of the Plaintiffs ever endorsed the Stiletto Clubs.

151.    All of Stiletto Entertainment's activities, including its theft of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Stiletto

Entertainment did not compensate Plaintiffs for its use of their Images.

152.    As such, Plaintiffs have never received any benefit for Stiletto Entertainment's use of their Images.

***Standard Business Practices in the Modeling Industry***

153.    It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

154.    The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendant's Theft of Plaintiff's Images***

155.    As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs privacy by using Plaintiffs Images for commercial purposes in order to promote their Clubs by and through various marketing and promotional mediums including, without limitation, the Clubs' Websites, Twitter, Facebook, and Instagram.

156.    Defendants showcased Plaintiffs' Images on the Clubs' Websites in order to create the false impression that Plaintiffs worked at one or more of the Clubs, or endorsed one or more of the Clubs.

157.    Defendants did so in order to attract clientele to their Clubs, promote their Clubs,

and thereby generate revenue for Defendants.

158.   Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed one or more of the Clubs.

159.   Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.  This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are each strippers.

160.   At no point were any of the Plaintiffs ever affiliated with any of the Clubs, or Defendants.

161.   Each of Plaintiffs' Images was used without her consent.

162.   At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

163.   No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

164.   No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including the Clubs' Websites, Twitter, Facebook, or Instagram accounts.

165.   Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

166.   Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

## FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq.*:
### False Endorsement)

167.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

168.    The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq.* apply to Defendants, and protect Plaintiffs from the conduct described herein.

169.    Defendants used Plaintiffs Images in order, *inter alia*, in order to create the false impression with the public that Plaintiffs either worked at one or more of the Clubs, or endorsed one of more of the Clubs.

170.    This was done to promote and attract clientele to the Clubs, and thereby generate revenue for the Defendants.

171.    Thus, this was done in furtherance of Defendants' commercial benefit.

172.    Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed, the Clubs, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Clubs.

173.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Clubs.

174.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Clubs, and the goods and services provided by the Clubs.

175.    Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs has been damaged in an amount to be determined at trial, but in all events not less than seventy five thousand dollars

($75,000), exclusive of punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of N.Y. Civ. Rights Law §§ 50-51)

176.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

177.    As set forth herein, Defendants have violated N.Y. Civil Rights Law §§ 50-51 by invading Plaintiffs' privacy, misappropriating their likeness, and publishing on the Clubs' websites or related social media accounts altered Images of Plaintiffs which made it appear as though Plaintiffs were employed at one or more of the Clubs, or endorsed one or more of the Clubs.

178.    At all relevant times, the Clubs' websites and social media accounts were used and operated by Defendants for advertising and trade purposes.

179.    The Clubs' websites and social media accounts were designed to attract business to the Clubs and generate revenue for Defendants.

180.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for the Clubs.

181.    At no point did any Defendant ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' Image on their website or social media account.

182.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Clubs.

183.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

184.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

185.    Due to Defendants' violation of Plaintiffs' rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Plaintiffs has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

186.    In addition, and pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby requests an Order permanently enjoining Defendants from violating Plaintiffs' right to privacy and publicity.

187.    In addition, and likewise pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby request an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of their statutory rights to privacy and publicity.

### THIRD CAUSE OF ACTION
### (Violation of N.Y. General Business Law § 349:
### N.Y. Deceptive Trade Practices Act)

188.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

189.    Defendants operated the Clubs' websites and social media accounts in order to promote the Clubs, to attract clientele thereto, and to thereby generate revenue for Defendants. As such, Defendants' operation of the websites and social media accounts, and their publication of Images thereon, was consumer-oriented in nature.

190.    Defendants published Plaintiffs' Images on the Clubs' websites and social media accounts in order to create the false impression that Plaintiffs were either strippers working at the Clubs, or endorsed the Clubs.

191.    As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the

public as to Plaintiffs' employment at and/or affiliation with the Clubs.

192.    As Defendants were at all times aware, Plaintiffs never worked at any of the Clubs, never endorsed any of the Clubs, and never had any affiliation with any of the Clubs.

193.    Defendants publication of Plaintiffs' Images was done without any Plaintiffs' consent and was misleading in a material respect because it created the impression that Plaintiffs were strippers working at the Clubs, or endorsed the Clubs.

194.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on their Club websites and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

195.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have  been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## FOURTH CAUSE OF ACTION
### (Defamation)

196.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

197.    As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote their Clubs to the general public and potential clientele.

198.    Defendants publication of said Images constitutes a representation that Plaintiffs was either employed by one or more of the Clubs, that they endorsed one or more of the Clubs, or that they had some affiliation with one or more of the Clubs.

199.    None of these representations were true.

200.    In publishing Plaintiffs' altered Images, it was Defendants' intention to create a

false impression to the general public that Plaintiffs were strippers working at the Clubs, or endorsed the Clubs.

201.    Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Clubs, had no affiliation with the Clubs, had not consented to the use of their Images, and had not been compensated for the use of their Images.

202.    In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Clubs, had no affiliation with the Clubs, had not consented to the use of their Images, and had not been compensated for the use of their Images.

203.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

204.    Defendants' publication of Plaintiffs' Images constitutes defamation under New York law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

205.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

206.    This is because any company or brand that sought to hire any of the Plaintiffs as a

company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

207.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

208.    Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand ($75,000), exclusive of punitive and exemplary damages.

### FIFTH CAUSE OF ACTION
**(Negligence and *Respondeat Superior*)**

209.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

210.    Upon information and belief, Defendants were negligent in their failure to promulgate policies and procedures concerning the misappropriation of the Images of models that were used on the Clubs' websites and social media accounts.

211.    Said failure was the proximate cause of the harm Plaintiffs suffered when their Images were published without their authorization.

212.    In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of Images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise their employees in order to ensure that these policies, along with Federal and New York law, were not violated.

213.    In addition, Defendants had a duty to refrain from appropriating the Images of

those with whom it had not contracted, and had not paid.

214. Defendants violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

215. As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**SIXTH CAUSE OF ACTION**
**(Conversion)**

216. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

217. Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests therein.

218. By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

219. As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand ($75,000), exclusive of punitive and exemplary damages.

**SEVENTH CAUSE OF ACTION**
**(Unjust Enrichment)**

220. Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

221. As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

222.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at the Clubs, or endorsed the Clubs.

223.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

224.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

225.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their Clubs.

226.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

227.    As such, Plaintiffs have been damaged in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand ($75,000), exclusive of punitive and exemplary damages.

## EIGHTH CAUSE OF ACTION
### (Quantum Meruit)

228.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

229.    Plaintiffs are each world famous models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

230.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

231.    Although Defendants have availed themselves of the benefit of being associated

with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, or endorse their Club, Defendants have not compensated Plaintiffs.

232.    Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

233.    Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), relating to Plaintiffs' first through eighth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Clubs;

(c) For punitive damages, in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
        January 26, 2016

                                        **THE CASAS LAW FIRM, P.C.**

                                        By: /s/ John V. Golaszewski
                                            John V. Golaszewski, Esq.
                                            1745 Broadway, 17th Floor
                                            New York, New York
                                            T: 855.267.4457
                                            F: 855.220.9626

                                        *Attorneys for Plaintiffs*